Shaw C. J.
delivered the opinion of the Court. In this case, after verdict, there is a motion in arrest of judgment on several grounds, which will be particularly stated.
The first and by far the most important ground is, that upon principles of law, the defendant is not liable either in this action or in any action which the plaintiff could bring.
This objection is founded on the assumption, that the defendant is not responsible for the acts of his deputy except so far as he was acting within the scope of his authority as a pilot; that in fact the deputy went on board the plaintiff’s vessel, and the loss of the vessel actually occurred, beyond the limits of the defendant’s authority as a pilot; that this appears from the declaration itself, and therefore that whatever remedy the plaintiff may have against the deputy personally, he has none against the defendant, and consequently that no judgment can be rendered against him on the verdict.
If this were a correct view of the law of the case, the conclusion contended for would undoubtedly follow. The defendant is responsible for the acts of his deputy, only so far as he acts in his character of a pilot for the port of Boston, and should he undertake to perform services, in another place, or of another character, it could not for a moment be maintained that the defendant would be responsible either for his capacity or due diligence.
The objection here is, that the services were not done, and the loss did not happen, withir the pilot ground of the pilots of Boston
*346 The declaration alleges that both did happen upon pilot ground, and after verdict, the averment must be understood by the Court to have been proved.
But it is contended that the law determines what is pilot ground, that the deélaration shows that the loss did not happen within the limits of pilot ground as fixed by law, and that any averment expressly against law, can be of no avail, whether proved or not. The argument is founded upon a construction of the act to regulate the pilotage for the harbour of Boston, passed June 11, 1829. This act provides that no person shall undertake to pilot any vessels, with certain specified exceptions, into or out of the harbour of Boston, without first having received a commission in the manner appointed in the act. The fourth section provides, and it is upon this that the defendant relies to maintain the construction contended for, that in case no Boston branch pilot shall offer his services to the master of a vessel bound into Boston harbour, before such vessel shall have passed a line drawn from Harding’s Rocks to the outer Graves and thence to Nahant Head, such master shall be at liberty to pilot his own vessel or to employ any other person to pilot his vessel into Boston harbour, without incurring the penalties of the act.[1]
From these provisions it is contended, that pilotage ground commences at the line in question and extends thence westerly into and through the harbour of Boston to the town. But to the Court it appears that the clauses, taken in connexion with the known localities and subject matter, must have a precisely opposite construction, and that they go to show that although the duties of an inward pilot do not terminate till the vessel is brought safely to her moorings, at the town, the pilotage ground, properly speaking, must commence to the eastward of the fine in question. The act speaks of inward pilotage of vessels bound into the port, necessarily implying that they are proceeding towards but have' not yet entered the port The purpose of the act is manifest, that, to secure the services of persons of competent skill and qualifications, all other persons are prohibited under a penalty, from acting as pilots, and *347 the exclusive right is secured to the commissioned pilots, to perform the service and receive the fees ; which are intended to be liberal. But this right depends upon their offering themselves before the vessel arrives so far inward towards the harbour as the line in question, thereby plainly manifesting that the law regards it as the duty of the pilots to offer themselves to vessels before they arrive at this line, and that after having so arrived the danger is principally over. This is equally manifest from a consideration of the nature of the duties of pilots, the purposes of their appointment, and the local dangers to which a foreigner might be exposed and against which the accurate local knowledge, skill and experience of a pilot are intended to guard. The object is to secure the benefit of such local knowledge, combined with competent skill and experience, in favor of vessels bound in from sea to the port. This construction might be strengthened, if necessary, by a reference to other statutes upon the same subject, which, although repealed, being in pari materia, might be resorted to for the purpose of putting a construction upon ambiguous or doubtful provisions of this statute enacted as a substitute ; but it is not necessary, as the Court consider it very clear, from the statute itself, that it was intended that pilots should go on board vessels inward bound and take charge of them as pilots, before they arrive at the line in question ; and they are to be secured in the exclusive enjoyment of the emoluments of this employment, upon the condition of doing so. It becomes unnecessary to inquire how far seaward the pilot ground of the Boston pilots may be considered to extend, because if the line is not fixed by law, it must be determined by evidence of usage or otherwise as a matter of fact, and the loss being averred in the declaration in the present case to have happened on pilot ground, that fact is now affirmed by the verdict.
It is contended, that upon this view of the case, pilots might be responsible for the defaults of their deputies, on the high seas, though pilots for the port of Boston, and that being pilots for the port, their jurisdiction does not extend beyond it ; and that the line at which pilots of outward bound ships may leave them is the same at which they can lawfully take charge of inward bound ships.
*348 If by the high seas is understood that portion of the ocean which lies beyond the head-lands, the fauces terra, it is not perceived to be an objection to the liability of pilots that iheii duty and employment does extend to the high seas. It is to conduct vessels from the high seas safely towards and into port, and must necessarily commence on the high seas, in the sense above suggested. It is obvious therefore, that though in common parlance they are called Boston pilots, a very small part only of their duty consists in conducting vessels up to town after entering the harbour. Nor can we discern any analogy between the limits of pilot ground for outward and inward pilots, even if the former were proved (as it is not) to be limited to the line in question. Vessels outward bound have the selection of their time for sailing, under favorable circumstances of wind and weather, with a full knowledge of their position, and when they have cleared the land can proceed to sea without danger. With inward bound vessels all this is reversed. The danger consists in approaching the land, and they need the aid of a pilot when this danger commences. Other cases of pilotage ground over the high seas, are familiar. The pilot ground of the Vineyard pilots extends from the Sound to Cape Cod, almost entirely upon the high seas.
Being of opinion that the loss happened whilst the deputy of the defendant was acting within the scope of his authority as pilot, upon pilot ground, the responsibility of the defendant for his default did attach, and therefore there is no cause, in this respect, to arrest the judgment.
2. The next cause assigned for arresting this judgment, is a misjoinder of counts, some being on the statute and some at common law.
Whether this would be ground for arresting the judgment were the record in such a state as to warrant the application of the rule, we give no opinion. That counts at common law and on statutes may be joined where the pleas and judgment may be the same, has recently been decided in this Court.[1] *349 But we think the rule has no application. Here all the counts are at common law. The statute, whilst it simply provides for the appointment and commissioning of pilots, makes no special provision for any remedy to the party injured, but leaves him to his remedy at the common law. There is then no such misjoinder of counts as the motion in arrest of judgment supposes.[2]
But it is contended that the third and fourth counts are not admissible by way of amendment, being for a different cause of action from that contained in the two first counts. Were this point open on a motion in arrest of judgment, there would be no ground to sustain it. Amendments are allowed for the purpose of setting forth in more accurate and technical form a claim for the same substantive cause of action. We cannot perceive that the allowance of the additional counts transgresses this rule. The same loss and the same substantial claim of indemnity are set forth in all, and it is in form only that they differ from each other. The rules and regulations set forth in the third count serve to show the nature and extent of the duties of the defendant, in his office and character of a pilot, and the manner in which he had assumed and become bound for the discharge of those duties. To whatever extent these rules and regulations have the force of laws in regard to others, the defendant is bound by them by expressly recognizing them in the acceptance of his commission. They are binding upon him by force of that acceptance, in the same manner and to the same extent as if they had been recited at length in his commission.[3]
3. The last objection is, that the statute is a private act and ought to have been recited in the declaration. Without going minutely into this subject, which sometimes involves distinctions of much nicety and difficulty, there is one consideration which renders it decisive that this is a public act, which is, that the first section in terms imposes a penalty upon every person who shall violate its provisions. It is therefore binding *350 upon every citizen of the Commonwealth, and upon every stranger who, coming within its jurisdiction, owes a temporary allegiance and is bound by its laws.

Judgment on the verdict.

 Rev. Stat. c. 32, § 24.

 Fairfield v. Burt, 11 Pick. 244; Worster v. Proprietors of Canal Bridge, 16 Pick. 541.

 See Rev. Stat. c. 32, § 15 et seq.

 See Morton v. Fairbanks, 11 Pick. 368; Mixen v. Howarth, 21 Pick. 205; Bishop v Baker, 19 Pick. 517; Kester v. Stokes, 1 Miles, 67; Cunningham v. Day, 2 Serg. & R. 1; Brown v. Crump, 6 Taunt. 300.